# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| HORACE MULLICAN and | § | |
| TAMARA MULLICAN | § | |
| | § | Case No. 4:08-cv-428 |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | § | |
| | § | |
| HORACE MULLICAN and | § | |
| TAMARA MULLICAN, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| CHRISTOPHER J. MOSER, | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Debtors Horace and Tamara Mullican's appeal and Trustee

Christopher Moser's cross-appeal from the judgment of the United States Bankruptcy Court

for the Eastern District of Texas. The Court has jurisdiction to consider this appeal pursuant

to 28 U.S.C. § 158. After considering the arguments of counsel, the record, and the

applicable law, for the reasons set forth below, the Bankruptcy Court's decision is

AFFIRMED.

## I.  BACKGROUND

In August 2005 (the "Petition Date"), Debtors Horace and Tamara Mullican filed a

petition for relief under Chapter 13 of the Bankruptcy Code. At the time, the Mullicans owed

approximately $119,000 in mostly unsecured debt. In accordance with a Chapter 13

bankruptcy, the Bankruptcy Court confirmed a Chapter 13 repayment plan. Under the plan, the Mullicans were to make monthly payments of $325 to the Chapter 13 Trustee for 57 months, for a total payment of approximately $18,000.

On October 24, 2006, Mr. Mullican's mother died leaving the entirety of her estate to Mr. Mullican. Her estate included her home, two vehicles, funds in two checking accounts, and the cash value of a life insurance policy. Mr. Mullican also became the trust beneficiary of his mother's Individual Retirement Account ("the IRA"). At the time of her death, the IRA held a balance of approximately $162,000.

Shortly thereafter, Mr. Mullican began withdrawing money from the IRA. During December 2006, January 2007, and February 2007, the Mullicans purchased new furniture, jewelry, and two computers. They also took a family vacation and paid off the charges they had placed on the credit card that Mr. Mullican's mother had allowed them to use.

In March 2007, Mr. Mullican received notice that he would be laid off from his job effective March 31, 2007. On April 18, 2007, the Mullicans filed a Notice of Voluntary Conversion to Chapter 7 and conversion schedules. In the conversion schedules, the Mullicans listed the IRA as exempt property. They also stated, however, that the IRA was not property of the Chapter 7 bankruptcy estate. Further, the only income listed on the Mullicans' conversion schedules was a "family contribution" of $1,576 per month and "IRA withdrawal(s)" of $1,700 per month. The Bankruptcy Court converted the case to Chapter 7 on April 23, 2007 ("Conversion Date").

The Chapter 7 Trustee, Christopher Moser ("Trustee") later filed an Objection to Exemptions wherein he asserted that the funds received from the IRA are non-exempt property of the estate. After receiving the objection, Mr. Mullican withdrew another $20,000 from the IRA.

In response, the Trustee filed an adversary proceeding against the Mullicans. In his original complaint, the Trustee objected to the Mullicans' claim that the IRA was exempt property. He also contended the IRA was property of the estate as of the Petition Date because on the Petition Date, the Mullicans had a contingent beneficiary interest in the IRA. Because the contingency had occurred, the balance of the IRA became property of the bankruptcy estate when Mr. Mullican's mother passed away. The Trustee also contended that any withdrawal of funds from the IRA post-petition constituted an avoidable post-petition transfer of property of the estate. He, accordingly, sought a judgment against the Mullicans for the full amount of funds withdrawn by the Mullicans since the Petition Date. And finally, the Trustee petitioned the Bankruptcy Court to deny discharge to the Mullicans. The adversary proceeding was set for trial in December 2007.

In September 2009, the Bankruptcy Court issued a Memorandum Opinion and Judgment. Therein, the Bankruptcy Court found that the IRA was not property of the bankruptcy estate as of the Petition Date. However, because the Mullicans converted their case in bad faith, the IRA became property of the bankruptcy estate on the Conversion Date. The Bankruptcy Court further found that the $20,000 withdrawal from the IRA after the

Conversion Date was an avoidable transfer that may be recovered by the Trustee. Thus, the Bankruptcy Court ordered Mr. Mullican to repay the $20,000 he withdrew from the IRA after the Trustee had filed his objection to the Mullicans' claim of exemption. The Bankruptcy Court also denied the Mullicans discharge of their debt pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(4)(A). Finally, the Bankruptcy Court ordered the Mullicans to turn over the IRA to the Trustee for distribution to the Mullicans' creditors.

The Mullicans timely filed a notice of appeal raising the following issues:

1) Whether the Bankruptcy Court erred in determining that the Mullicans converted their Chapter 13 case to a Chapter 7 case in bad faith;

2) Whether the Bankruptcy Court erred in granting the Trustee a judgment in the amount of $20,000 on the Trustee's claim for avoidance of the post-petition transfer;

3) Whether the Bankruptcy Court erred in denying the Mullicans discharge of their debt pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(4)(A);

4) Whether the Bankruptcy Court erred in determining that the IRA was not exempt property; and

5) Whether the Bankruptcy Court erred by not allowing the Mullicans to amend their schedules to claim exemptions.

The Trustee then timely filed a cross appeal raising the following issue: whether the Bankruptcy Court erred in determining that the Mullicans' interest in the IRA on the Petition

Date was not property of the bankruptcy estate.

## II. ANALYSIS

### A. Standard of Review

When reviewing a decision of the bankruptcy court, the "district court functions as an appellate court and applies the same standard of review generally applied in federal appellate courts." *Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103-04 (5th Cir. 1992).

Accordingly, the district court must accept the bankruptcy court's findings of fact, unless clearly erroneous, and examine *de novo* the court's conclusions of law. *See Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307-08 (5th Cir. 1985). Under the clearly erroneous standard, the court will only reverse if, after reviewing all of the evidence in the record, the court is "left with the definite and firm conviction that a mistake has been made." *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 565 (5th Cir. 1995) (quoting *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).

Under this framework, the Court reviews the issues raised by the parties.

### B. Bad Faith Conversion

The first issue raised by the Mullicans concerns whether a bankruptcy court may consider post-conversion facts to determine whether a debtor converted a bankruptcy case under Chapter 13 to a case under Chapter 7 in bad faith under 11 U.S.C. § 348(f). Here, the Bankruptcy Court considered both pre-conversion and post-conversion facts to determine

whether the Mullicans had a bad-faith intent when they converted their case. Without citing any authority, the Mullicans contend that the Bankruptcy Court's consideration of post-conversion facts was error.

Title 11 U.S.C. § 348(f) provides that except when a Chapter 13 bankruptcy is converted to a Chapter 7 bankruptcy in bad faith, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion[.]" *In re Stamm*, 222 F.3d 216, 218 (5th Cir. 2000). The Bankruptcy Code and the circuit courts have yet to define bad faith under § 348(f).

However, a few bankruptcy courts have taken the opportunity to define bad faith. *See e.g. In re Bejarano*, 302 B.R. 559, 562 (Bankr. N.D. Ohio 2003); *In re Siegfried*, 219 B.R. 581, 585 (Bankr. D. Colo. 1998). The Court finds the definition of bad faith as defined by the United States Bankruptcy Court for the Northern District of Ohio in *In re Bajarano* to be both persuasive and consistent with the ordinary meaning of bad faith. *See Bejarano*, 302 B.R. at 562; BLACK'S LAW DICTIONARY 149 (8th ed. 2004) (defining bad faith as "[d]ishonesty of belief or purpose"). In *In re Bajarano*, the court defined "bad faith" under § 348(f) as "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Bejarano*, 302 B.R. at 562 (citing *United States v. True*, 250 F.3d 410, 423 (6th Cir. 2001)). The *Bejarano* court also

indicated that courts should consider all relevant facts when determining whether a debtor's conversion was in bad faith. *Id.* (citing *Siegfried*, 219 B.R. at 585). The Court agrees. When deciding whether a debtor converted a case with bad faith intent, the bankruptcy court may consider all facts that are relevant to the debtor's intent at the time of conversion, regardless of whether the fact occurred pre-conversion or post-conversion. Accordingly, the Court finds that the Bankruptcy Court did not commit error by considering post-conversion facts when determining whether the Mullicans converted their case with bad faith intent.

The Mullicans also argue that the Bankruptcy Court clearly erred in finding that the Mullicans had converted their case in bad faith. As alleged by the Mullicans at trial, the Mullicans converted their case not in bad faith but because Mr. Mullican lost his job and they thought they would be unable to make the plan payments without his income.

To support their argument that the Bankruptcy Court clearly erred in finding that the Mullicans had converted their case in bad faith, the Mullicans point to the fact that Mr. Mullican had lost his job, Mr. Mullican's testimony that they converted the case because he lost his job, and the fact that the Mullicans disclosed the inheritance at the time of conversion even though they had no duty to disclose.

The Bankruptcy Court found the Mullicans' assertion that they converted the case because Mr. Mullican lost his job lacked credibility. A bankruptcy court's findings based on credibility determinations are entitled to significant weight because the bankruptcy judge is "in a far superior position to gauge the debtor's credibility than" a court reviewing only

the cold record.  *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 373 (5th Cir. 2005) (quoting *First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 814 (5th Cir. 1992)).  The Court finds no reason in this case to disturb the Bankruptcy Court's credibility finding.

Additionally, the Court finds no reason to disturb the Bankruptcy Court's finding that the Mullicans converted their case in bad faith.  The record in this case supports the Bankruptcy Court's finding that the Mullicans did not convert their case because they feared they would be unable to make their payments.  Rather, the record demonstrates that the Mullicans were deliberately attempting to avoid paying unsecured creditors.  The evidence in the record indicates at the time of the conversion the Mullicans were current in making their plan payments, and even without Mr. Mullican's job the Mullicans had the ability to continue making plan payments for the foreseeable future.  The IRA Mr. Mullican inherited was worth almost three years of Mr. Mullican's salary at the time he lost his job.  With the proceeds from the IRA, the Mullicans could have easily paid their Chapter 13 plan in full.

Further, the evidence indicates that the Mullicans were unconcerned about their financial condition and wholly unconcerned about repaying their unsecured creditors (except to the extent their unsecured creditors were family members).  Shortly after Mr. Mullican's mother passed away, but before the Mullicans converted their case, the Mullicans began withdrawing money from the IRA.  During December 2006, January 2007, and February 2007, the Mullicans purchased new furniture, jewelry, and two computers.  They also took

a family vacation in the spring of 2007 and paid off the charges they had placed on the credit card that Mr. Mullican's mother had allowed them to use.

Also, the evidence shows that the Mullicans repeatedly failed to disclose all of their post-petition assets and made false representations regarding the magnitude of Mr. Mullican's inheritance. For example, the Mullicans swore in their conversion schedules that their only income was a "family contribution" of $1,576 per month and "IRA withdrawal(s)" of $1,700 per month. The evidence establishes that the Mullicans were withdrawing closer to $4,500 per month from the IRA.

The Court, having reviewed all of the evidence in the record, is not left with a definite and firm conviction that a mistake has been made. Accordingly, the Court affirms the Bankruptcy Court's judgment on this issue.

### C. Judgment to the Trustee in the Amount of $20,000

For their next issue, the Mullicans complain that the Bankruptcy Court wrongly granted the Trustee a judgment in the amount of $20,000.[1] The Bankruptcy Court found that 11 U.S.C. § 549(a) permits a trustee to void an unauthorized post-petition transfer of property of the estate if the following elements are present: (1) property was transferred; (2) the property was part of the bankruptcy estate; (3) the transfer occurred after the commencement

---

[1] The Court finds this issue inadequately briefed. The Mullicans failed to cite any authority to support their position that the Bankruptcy Court erred. Because of such failure, the Court could consider the challenge abandoned for being inadequately briefed. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004); *L&A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994).

of the case; and (4) neither the bankruptcy court nor the Bankruptcy Code authorized the transfer. The Bankruptcy Court found that the Mullicans transferred $20,000 after the Conversion Date from the IRA to themselves without authorization. Because the IRA was property of the estate, the Bankruptcy Court concluded the $20,000 withdrawal was an avoidable transfer that may be recovered by the Trustee.

The Mullicans challenge the Bankruptcy Court's finding that the IRA was property of the estate. As the Court has previously affirmed, the Mullicans converted their case in bad faith. When debtors convert their Chapter 13 bankruptcy to a Chapter 7 in bad faith, any inheritance or windfall the debtors received during the Chapter 13 bankruptcy becomes part of the Chapter 7 bankruptcy estate. *In re Stamm*, 222 F.3d 216, 218 n.1 (5th Cir. 2000) (stating that the *Lybrook* rule applies to "bad faith" conversions to Chapter 7 bankruptcy); *see Matter of Lybrook*, 951 F.2d 136, 139 (7th Cir. 1991) (holding that if a debtor receives an inheritance during a Chapter 13 bankruptcy and later converts his case to a Chapter 7, the inheritance is included in the Chapter 7 estate). When the Mullicans converted their bankruptcy case in bad faith, the IRA became part of the Chapter 7 bankruptcy estate. Accordingly, the Court affirms the decision of the Bankruptcy Court on this issue.

### D. Denial of a Discharge under 11 U.S.C. § 727

The Mullicans also complain that the Bankruptcy Court wrongfully denied the discharge of their debt under two subsections of 11 U.S.C. § 727. The relevant parts of § 727 provide,

(a) The court shall grant the debtor a discharge, unless-

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted it to be transferred, removed, destroyed, mutilated, or concealed-

. . .

(B) property of the estate, after the date of the filing of the petition;

. . .

(4) the debtor knowingly and fraudulently, in or in connection with the case-

(A) made a false oath or account.

The Mullicans argue that the Bankruptcy Court wrongly found that the Mullicans, with intent to hinder, delay, or defraud their creditors, transferred and concealed property of the estate after the Petition Date and that the Mullicans knowingly and fraudulently, in connection with their pending case, made a false oath. Factual findings under this section are reviewed for clear error. *See Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1028 (5th Cir. 1992).

### *Transfer or Concealment of Assets*

To establish that discharge should be denied under § 727(a)(2)(A), the Trustee had the burden to prove that the Mullicans transferred or concealed property of the estate with the intent to hinder, delay, or defraud the Mullicans' creditors. *See Cadle Co. v. Pratt*, 411 F.3d 561, 565 (5th Cir. 2005). The Bankruptcy Court found that the Mullicans concealed and

transferred their interest in the IRA and Mr. Mullican's inheritance under his mother's will with the intent to hinder, delay, and defraud the Mullicans' creditors. To support this conclusion, the Bankruptcy Court found that the Mullicans failed to forthrightly disclose the extent of Mr. Mullican's inheritance at the meeting of creditors. Both Mr. and Mrs. Mullican attended the meeting of creditors and had the opportunity to correctly disclose the contents of the inheritance. Instead, at the meeting, Mr. Mullican testified under oath that the only things he received from his mother were the house and the IRA. The Mullicans concealed Mr. Mullican's receipt of two vehicles (a 2005 Kia Amanti and a 1992 Chevrolet S10 pickup truck), funds in two checking accounts totaling approximately $14,000, and the cash value of a life insurance policy in the amount of $986.49.

As previously discussed, the evidence supports the Bankruptcy Court's findings that the Mullicans in their conversion schedules misled the Trustee regarding the extent of their withdrawals from the IRA and their monthly income. The Mullicans were also found to have delayed providing the Trustee their bank and credit records, and they continued to make withdrawals from the IRA after the Trustee objected to the Mullicans' claimed exemption. And finally, the Bankruptcy Court found that Mr. Mullican's testimony at trial lacked credibility.

The Mullicans argue that the Bankruptcy Court clearly erred in finding that the Mullicans acted with intent to defraud their creditors.[2] To support their argument, the

---

[2] The Mullicans also contend that the Bankruptcy Court erred in finding that the IRA was property of the estate. As previously discussed, the IRA was property of the Chapter 7

Mullicans cite to evidence that they disclosed the IRA in their conversion schedules and their intent to continue to withdraw from the IRA. They also point to Mr. Mullican's testimony that the reason the Mullicans listed only $1,700 a month in income from the IRA was because he estimated that to be the amount the Mullicans would need to withdraw for monthly expenses. Though this evidence could support a finding that the Mullicans did not conceal or transfer property of the estate with intent to hinder, delay, or defraud the Mullicans' creditors, "it does not compel such a finding and does not require [the Court] to reverse the [bankruptcy] court's holding." *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 374 (5th Cir. 2005) (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 790 (1st Cir. 1997)). Considering all of the evidence in the record, especially the Bankruptcy Court's credibility findings, the Court cannot say that the Bankruptcy Court clearly erred when it found that the Mullicans transferred and concealed property of the estate with the intent to hinder, delay, and defraud the Mullicans' creditors. Accordingly, the Court affirms the Bankruptcy Court's judgment on this issue.

### *Knowingly and Fraudulently Made a False Oath*

To establish that discharge should be denied under 11 U.S.C. § 727(a)(2)(A), the Trustee had the burden to prove that "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case."

---

bankruptcy estate.

*Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). A false

oath includes a false statement or omission in the debtor's schedules or a false statement by

the debtor at an examination during the course of the bankruptcy proceedings. *Beaubouef*

*v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). The Bankruptcy Court

found that the Mullicans made the following false statements: (1) bankruptcy schedules

included all of the Mullicans' property; (2) Mr. Mullican only inherited the IRA and his

mother's home; (3) Mr. Mullican had only taken "a little out" of the IRA for living expenses;

and (4) the Mullicans were receiving $1,700 a month in IRA withdrawals. The Mullicans

contend the false statements were merely negligent mistakes and were therefore not made

with fraudulent intent. A finding of fraudulent intent is a finding of fact reviewed for clear

error. *See id.* at 382.

Fraudulent intent may be proven by circumstantial evidence. *See id.* Further,

fraudulent intent may be shown where there is an existence of more than one falsehood,

together with the failure to take advantage of the opportunity to clear up all inconsistencies

and omissions when the debtors amend their schedules. *Id.* Here, the evidence demonstrates

that the Mullicans falsely stated in their schedules that their monthly income from the IRA

was $1,700. The Mullicans' actual monthly income from the IRA was closer to $4,500.

When the Mullicans amended their schedules on the eve of trial, the Mullicans did not take

the opportunity to correct that false statement. Additionally, at the creditor's meeting, Mr.

Mullican testified falsely that all he inherited from his mother was the IRA and her home.

That statement was false. Both Mullicans attended the creditor's meeting and both had the

opportunity to correct that false statement.

The Mullicans have failed to demonstrate that the Bankruptcy Court clearly erred in

finding that the Mullicans made false statements with fraudulent intent. Merely stating that

the false statements were negligent mistakes is insufficient to establish that the Bankruptcy

Court made a clearly erroneous finding.

Without citing any authority, the Mullicans also argue that the false statements were

not material. "The subject matter of a false oath is material, and thus sufficient to bar

discharge, if it bears a relationship to the bankrupt's business transactions or estate, or

concerns the discovery of assets, business dealings, or the existence and disposition of [the

debtor's] property." *Id.* (quoting *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)). Here,

the Mullicans made false statements concerning the existence and disposition of the their

property. Accordingly, the Court cannot find that the Bankruptcy Court clearly erred in

finding that the Mullicans' false statements were material to the case. Thus, the Court

affirms the Bankruptcy Court's judgment on this issue.

### E. Exempt Property and Amendment of the Schedules

For their last two issues, the Mullicans complain that the Bankruptcy Court erred by

determining that the IRA was not exempt and by not allowing the Mullicans to amend their

schedules to claim exemptions.[3] In their conversion schedules, the Mullicans listed the IRA

---

[3] The Court finds that the Mullicans did not adequately brief these issues. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004); *L&A Contracting Co. v. S.*

as exempt property. Accordingly, the Trustee filed an objection to the Mullicans' claimed

exemption. At trial, neither party argued about whether the IRA was exempt property

because on the eve of trial the Mullicans removed the IRA from their claim of exemptions.

In the Bankruptcy Court's Memorandum Opinion and Judgment, the Bankruptcy Court did

not rule on whether the IRA was exempt property. Additionally, the Bankruptcy Court never

denied the Mullicans the opportunity to amend their schedules to claim exemptions. The

Court, having reviewed the record, finds that the Mullicans failed to ask for such relief.

Because the Bankruptcy Court did not make a finding that the IRA was not exempt property

and because the Mullicans never moved to amend their schedules to claim such an

exemption, the Court cannot find that the Bankruptcy Court erred by determining that the

IRA was not exempt property of the estate or by not allowing the Mullicans to amend their

schedules. Accordingly, the Court affirms the Bankruptcy Court's judgment on this issue.

### F. The Mullicans' Interest in the IRA on the Petition Date

The Trustee's only issue on appeal is whether the Bankruptcy Court erred in

determining that the Mullicans' interest in the IRA on the Petition Date was not property of

the bankruptcy estate. It is undisputed that on the Petition Date Mr. Mullican was named the

intended beneficiary of the IRA upon his mother's death. The Trustee maintains that Mr.

---

*Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994). Using less than one page to argue these issues, the Mullicans did not cite to the record or to any authority to support their position. The Court ordered the parties to rebrief the issues and to cite to the relevant authority and identify in the record where the Mullicans preserved the issues for appeal. The parties again failed to comply with the order.

Mullican's contingent beneficiary interest in his mother's IRA was property of the Mullican's bankruptcy estate on the Petition Date. Pursuant to 11 U.S.C. § 541(a)(1), the bankruptcy estate includes all the debtor's legal and equitable property interests as of the petition date. The Bankruptcy Court, instead of determining whether Mr. Mullican's contingent beneficiary interest was a legal or equitable interest in property, found that the IRA contained an anti-alienation provision. Because the IRA contained an anti-alienation provision, any interest Mr. Mullican had in the IRA on the Petition Date was excluded from the estate under 11 U.S.C. § 541(c)(2). Section 541(c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Thus, if Mr. Mullican's mother was restricted from transferring the beneficial interest in the IRA, Mr. Mullican's beneficial interest in the IRA could not become property of the bankruptcy estate to eventually be transferred to his creditors.

The Court, having reviewed the record, finds that the Bankruptcy Court clearly erred in determining that the IRA contained an anti-alienation provision. There is no evidence in the record before the Court, either documentary or testimonial, to support the Bankruptcy Court's conclusion. To the contrary, Mr. Mullican testified at trial that his mother could have transferred her interest in the IRA to another. The Bankruptcy Court clearly erred in finding that the IRA was subject to an anti-alienation provision and in finding that 11 U.S.C. § 541(c)(2) excludes the IRA from the Mullicans' bankruptcy estate.

However, the error by the Bankruptcy Court did not affect the substantial rights of the parties. The Trustee urges the Court to reverse in part the Bankruptcy Court's finding that 11 U.S.C. § 541(c)(2) excludes the IRA from the Mullicans' bankruptcy estate, but asks the Court to render the same judgment. Pursuant to 28 U.S.C. § 2111, the court should affirms judgments notwithstanding "errors or defects which do not affect the substantial rights of the parties." The Court finds that the error in this case will not affect the substantial rights of the parties because the error did not affect the judgment in the case. Accordingly, the Court declines to remand the issue of whether the Mullicans' interest in the IRA was property of the estate as of the Petition Date.

### III. Conclusion

For the reasons previously stated, the Court AFFIRMS the decision of the United States Bankruptcy Court for the Eastern District of Texas.

**It is SO ORDERED.**

**SIGNED this 2nd day of August, 2009.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE